UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

FREDERICK H. PHELPS,

                    Plaintiff,

v.                                              1:13-CV-1510
                                                (GTS/CFH)

MAUREEN BOSCO, Exec. Dir. of Cent. N.Y.
Psychiatric Ctr; MARGARET C. DRAKE, Assist.
Counsel, N.Y. State Office of Mental Health;
N.Y. STATE OFFICE OF MENTAL HEALTH;
N.Y. STATE DIV. OF CRIM. JUSTICE SERVS.;
FED. BUREAU OF INVESTIG. CRIM. JUSTICE
INFO. SERVS.; NAT'L INSTANT BACKGROUND
CHECK SYS.; U.S. DEP'T OF JUSTICE; ERIC
HOLDER, U.S. Att'y Gen.; and ROBERT
MUELLER, III, Dir. of Fed. Bureau of Investig.,

                    Defendants.
_____

APPEARANCES:                             OF COUNSEL:

OLIVER LAW OFFICE                 LEWIS B. OLIVER, JR., ESQ.
  Counsel for Plaintiff
156 Madison Avenue
Albany, NY 12202

HON. ERIC T. SCHNEIDERMAN        ADRIENNE J. KERWIN, ESQ.
Attorney General of the State of New York      Assistant Attorney General
  Counsel for State Defendants
The Capitol
Albany, NY 12224

U.S. DEP'T OF JUSTICE              DANIEL M. RIESS, ESQ.
  Counsel for Federal Defendants      Trial Attorney
Civil Division, Rm. 6122
20 Massachusetts Avenue, NW
Washington, D.C. 20530

GLENN T. SUDDABY, United States District Judge

<u>**DECISION and ORDER**</u>

Currently before the Court, in this civil rights action filed by Frederick H. Phelps ("Plaintiff") against the four above-described state employees and agencies ("the State Defendants") and the five above-described federal employees and agencies ("the Federal Defendants"), are the State Defendants' motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and the Federal Defendants' motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. Nos. 7, 17.) For the reasons set forth below, the State Defendants' motion is granted in part and denied in part, and the Federal Defendants' motion is denied.

## I. RELEVANT BACKGROUND

### A. Summary of Plaintiff's Complaint

In his Complaint, Plaintiff asserts three claims: (1) a claim against the State Defendants and Federal Defendants, pursuant to 18 U.S.C. § 925A, for a judgment declaring that Plaintiff has never been "committed to a mental institution" for the purpose of the relevant provision of the federal Gun Control Act, 18 U.S.C. § 922(g)(4), and directing NICS to remove from its records the statement that he has been so committed;[1] (2) a claim against Defendant Bosco, pursuant to 18 U.S.C. § 1983, for recklessly misinterpreting the term "committed to a mental institution" under 18 U.S.C. § 922(g)(4) as including a five-day admission to the Central New York Psychiatric Center for an evaluation pursuant to N.Y. Mental Hyg. Law § 9.37(a), in

---

[1]        Although Plaintiff's first claim is not expressly asserted against Defendant Drake (Dkt. No. 1, at ¶ 44 [omitting Drake as a Defendant]), it asserts factual allegation against her (*id.* at ¶ 57). As a result, the Court liberally construes that claim as asserted against Defendant Drake. Fed. R. Civ. P. 8(e).

violation of his right to keep and bear arms under the Second Amendment; and (3) a claim against the State Defendants, pursuant to 18 U.S.C. § 1983, for recklessly implementing a policy that fails to distinguish between an individual who has been admitted to a mental institution for an evaluation pursuant to N.Y. Mental Hyg. Law § 9.37(a) and a person who has been "committed" to such an institution within the meaning of 18 U.S.C. § 922(g)(4), in violation of his right to keep and bear arms under the Second Amendment.  (Dkt. No. 1.)[2]

Generally, these claims are based on the following factual allegations, which are contained in the Complaint as well as the documents attached to it and incorporated by reference in it.  (*Id.*)

### Events in 1996

1.      On or before July 22, 1996, Plaintiff kicked the Columbia County Sheriff (apparently during Plaintiff's attempt to persuade the Columbia County District Attorney to file a criminal complaint against individuals with whom Plaintiff was having a land boundary dispute).

2.      On or about July 22, 1996, Plaintiff was arrested on charges of Assault in the Second Degree, Harassment and Resisting Arrest, and held in the Columbia County Correctional Facility ("CCFC").

3.      While being held in the CCFC, Plaintiff went on a hunger strike (for nine days) "as a means to protest perceived unjust treatment."

---

[2]      As relief for these claimed violations, Plaintiff seeks the following: (1) with regard to the first claim, he seeks injunctive relief, declaratory relief, and attorney's fees and costs; (2) with regard to the second claim, he seeks compensatory damages, punitive damages, and attorney's fees and costs; and (3) with regard to the third claim, he seeks injunctive relief, compensatory damages, punitive damages, and attorney's fees and costs.  (*Id.*)

4.      On August 30, 1996, a physician at the CCFC (Dr. M. Thambirajah, M.D.) completed (1) a Certificate of Examination stating that "in my opinion [Plaintiff] has a mental illness for which immediate inpatient care and treatment in a hospital is appropriate," and (2) an Application for Involuntary Admission requesting that Plaintiff be involuntarily admitted to the Central New York Psychiatric Center ("CNYPC") pursuant to N.Y. Mental Hyg. Law § 9.37 in order to undergo an evaluation of whether he was a danger to himself (as a result of his statement that he was on the hunger strike because "they're doing something to the food and water here").

5.      Later that day, Plaintiff was screened by a physician at the CNYPC who found that Plaintiff appeared to be expressing "delusion" and "paranoia" (due his belief that there was "something in the food") and diagnosed him with "Depressive Disorder." As a result, Plaintiff was admitted to the CNYPC for "further evaluation of his emotional instability."

6.      Upon his admission to the CNYPC, Plaintiff received a written notice advising him of his admission "under Section 402 of the Correction Law" and his right to consult with the Mental Hygiene Legal Service, and telling him that, "[i]f you desire a court hearing on the questions of your hospitalization, ask to talk to the Mental Hygiene Legal Service." He acknowledged his receipt of that notice in writing.

7.      On September 4, 1996, Plaintiff was discharged from the CNYPC. The Discharge Summary of a psychiatrist (Dr. Karl Newton, M.D.) stated, "Admitting doctor diagnosed him as Depressive Disorder NOS. He has been examined by this writer twice yesterday and again today and found free of obvious delusions and reasonable in his outlook and his plans. . . . There is no psychosis or mood disorder found in this setting. He does not appear to be a danger to himself or others."

8.      On February 21, 2013, Plaintiff went to Steve's Gun Shop in Stephentown, New York, to purchase a long gun for hunting. After Plaintiff completed a Firearms Transaction Record form (ATF Form 4473), the seller ran an NICS background check, which was denied under NTN #2849-6Y8 with an indication that Plaintiff was ineligible to obtain a firearm due to disqualification under the Gun Control Act, 18 U.S.C. § 921 *et seq.*

9.      Later that day, Plaintiff sent a letter to the Federal Bureau of Investigation ("FBI") inquiring about the denial of his application to obtain a firearm.

10.     On March 4, 2013, the FBI sent a responsive letter to Plaintiff informing him that his application to obtain a firearm was denied on the basis of information that he was disqualified from possessing a firearm pursuant to 18 U.S.C. § 922(g)(4), which prohibits any person who has been adjudicated as a mental defective or who has been committed to a mental health institution from owning a firearm.  The letter advised him that the agency that had provided the disqualifying information was the New York Office of Mental Health ("NYOMH"), and gave him instructions on how to challenge the accuracy of the record upon which the denial was based.

11.     At some point between April 25, 2013, and April 30, 2013, Plaintiff sent a letter to the NYOHM with documentation explaining the inaccuracy of the records upon which his NICS denial was based, and requesting that the records be corrected and that the denial of his application to obtain a firearm be reversed.

12.     On May 3, 2013, Plaintiff sent a letter to the CNYPC stating that he had been taken to the CNYPC in 1996 because he would not eat in the county jail, that he ate while he was

at the CNYPC, and that he needed records explaining that he had not been committed to the CNYPC.

13. On July 12, 2013, the Executive Director of the CNYPC, Maureen Bosco, wrote a responsive letter to Plaintiff stating that his five (5) day stay at the CNYPC in 1996 was an "involuntary commit[ment]," that it was her understanding (from her conversation with him) that he had received his mental health record from the CNYPC, and that there was no additional information or assistance she or any staff could provide to him.

14. On July 26, 2013, Plaintiff, though his attorney, sent a letter challenging the accuracy of the records provided by the NYOMH to the FBI upon which the denial of Plaintiff's application to obtain a firearm was based. The letter explained the incident upon which the NYOMH had determined that Plaintiff had been committed to a mental institution (i.e., his admission to the CNYPC under N.Y. Mental Hyg. Law § 9.37 for evaluation based on his refusal to eat in the county jail in protest of perceived unjust treatment there, and his discharge from the CNYPC five days later based on a finding that Plaintiff exhibited "no psychosis or mood disorder" and did "not appear to be a danger to himself or others"). The letter further explained that concluding from this incident that Plaintiff had been "committed" to a mental institution for purposes of 18 U.S.C. § 922(g)(4) was not consistent with case law (such as *United States v. Waters*, 23 F.3d 29 [2d Cir. 1994]), which defines "commitment" as an application for admission by a qualified person accompanied by two (2) separate certificates completed and signed by two (2) examining physicians who recommend commitment (and who did not execute the application for admission).

15.     On September 6, 2013, an Assistant Counsel in the Office of Counsel of the

NYOMH, Margaret C. Drake, Esq., sent a responsive letter to Plaintiff stating that his five-day

stay at the CNYPC in 1996 (which was pursuant to N.Y. Mental Hyg. Law § 9.37 and N.Y.

Correct. Law § 508) was a "commitment" to a mental institution pursuant to 18 U.S.C. §

922(g)(4).  The letter explained, *inter alia*, that two examining physicians had recommended that

he be so committed–the physician who had executed the application (Dr. M. Thambirajah) and

the screening physician at the CNYPC–and that Plaintiff had been notified of his right to have a

court hearing on the question of his hospitalization.  (*Id*.)

**B.      Summary of Parties' Arguments on Pending Motions**

**1.      State Defendants' Motion to Dismiss for Failure to State a Claim**

**a.      State Defendants' Memorandum of Law**

Generally, in their memorandum of law, the State Defendants asserts five arguments.

(Dkt. No. 7, Attach. 1.)

First, the State Defendants argue, to the extent any of Plaintiff's claims request money

damages and are asserted against Defendants NYOMH and NYDCJS, or against Defendants

Drake and Bosco in their official capacities, those claims must be dismissed as barred by the

Eleventh Amendment.  (*Id*.)

Second, the State Defendants argue, to the extent Plaintiff's second and third claims

(under 42 U.S.C. § 1983 and the Second Amendment) are asserted against Defendants NYOMH

and NYDCJS, or against Defendants Drake and Bosco in their official capacities, those claims

must be dismissed because those Defendants are not "persons" under 42 U.S.C. § 1983.  (*Id*.)

Third, the State Defendants argue, to the extent Plaintiff's first claim (under 18 U.S.C. § 925A) is asserted against the State Defendants, that claim must be dismissed for failure to state a claim because (a) such a claim against Defendants Drake and Bosco in their individual capacities is not expressly permitted by 18 U.S.C. § 925A, and (b) such a claim against Defendants NYOMH and NYDCJS, as well as against Defendants Drake and Bosco in their official capacities, fails to allege facts plausibly suggesting that Plaintiff was *erroneously* deemed not qualified to purchase a firearm under 18 U.S.C. § 922(g)(4).  (*Id.*)

Fourth, the State Defendants argue, in any event, Plaintiff's second and third claims (again, under 42 U.S.C. § 1983 and the Second Amendment) must be dismissed for failure to state a claim because (a) those claims assert no allegations against Defendant NYDCJS (which, in any event, exercises no judgment or decision-making authority in connection with what information is provided to, and maintained by, NICS), (b) those claims fail to allege facts plausibly suggesting the personal involvement of Defendants Drake and Bosco, and (c) the Supreme Court has held that restrictions placed on the obtaining and possessing of firearms by people who had previously been involuntarily admitted to mental hospitals do not violate the Second Amendment.  (*Id.*)

Fifth, the State Defendants argue, based on Plaintiff's allegations, Defendants Drake and Bosco are protected from liability as a matter of law by the doctrine of qualified immunity because, even assuming Plaintiff has alleged facts plausibly suggesting the violation of his constitutional rights, it was objectively reasonable for Defendants Drake and Bosco to believe that no action they took (or failed to take) with respect to Plaintiff violated the Second Amendment.  (*Id.*)

### b.    Plaintiff's Opposition Memorandum of Law

Generally, in his opposition memorandum of law, Plaintiff asserts five arguments.  (Dkt. No. 14, Attach. 1.)

First, Plaintiff argues, while it is true that the Eleventh Amendment bars a claim for money damages against a state agency or an employee of thereof acting in her official capacity, it does not bar claims for injunctive relief against such defendants; and such claims are among those contained in Plaintiff's Complaint.  (*Id.*)

Second, Plaintiff argues, to the extent his second and third claims (again, under 42 U.S.C. § 1983 and the Second Amendment) are asserted against Defendants NYOMH and NYDCJS, or against Defendants Drake and Bosco in their official capacities, *and those claims request injunctive relief*, those claims are against "persons" for purpose of 42 U.S.C. § 1983 and are thus permissible.  (*Id.*)

Third, Plaintiff argues, his first claim (under 18 U.S.C. § 925A) states a claim against the State Defendants because it alleges facts plausibly suggesting that the State Defendants erroneously notified NICS that Plaintiff's admission to CNYPC for observation in 1996 was a "commitment" for purposes of 18 U.S.C. § 922(g)(4).  (*Id.*)  More specifically, in support of this argument, Plaintiff argues as follows: (a) the standard for what constitutes a "commitment" for purposes of 18 U.S.C. § 922(g)(4) does not include confinement for observational purposes under N.Y. Mental Hyg. Law § 9.37, as is evident from the Brady Act's legislative history and 27 C.F.R. § 478.11 (which states, "The term ['commitment'] does not include a person in a mental institution for observation . . ."); (b) *Waters* is distinguishable because the standard for an involuntary commitment under N.Y. Mental Hyg. Law § 9.27 is higher than the standard for a

confinement under N.Y. Mental Hyg. Law § 9.37 (which permits a patient to be held involuntarily for only 72 hours, excluding Sundays and holidays, before a second physician must sign off on the patient's continued retention);[3] (c) for an involuntary confinement to be considered a "commitment" for purposes of 18 U.S.C. § 922(g)(4), there must be a higher standard for the confinement than is found in N.Y. Mental Hyg. Law § 9.37 (as was recognized in *Amato v. Hartnett*, 936 F. Supp.2d 416 [S.D.N.Y. 2013] and *In re Robert T.*, 887 N.Y.S.2d 486 [N.Y. Cnty. Ct., Dutchess Cnty., 2009]), including a specific notification that the patient is entitled to court review of his or her confinement (which did not occur in this case); and (d) the current reporting practices of Defendants NYOMH and Drake (which do not distinguish between "observation" or "evaluation" and "commitment") are inconsistent with the reporting requirements of 18 U.S.C. § 922(g)(4).  (*Id.*)

Fourth, Plaintiff argues, his second and third claims (again, under 42 U.S.C. § 1983 and the Second Amendment) state a claim upon which relief can be granted because (a) the inclusion of NYDCJS in this action is necessary to obtain effective injunctive relief (because OMH records that are transmitted to the NICS database "go through the DCJS"), and (b) Plaintiff's allege facts plausibly suggesting the personal involvement of Defendants Drake and Bosco in that they knowingly or recklessly failed to correct the error in question after being notified of it by letter (and investigating the error).  (*Id.*)

---

[3]     The Court notes that it appears that Plaintiff was admitted to the CNYPC on Friday, August 30, 1996, and discharged from the CNYPC on Wednesday, September 4, 1996 (i.e., three days after his admission, excluding Sunday, September 1, 1996, and Labor Day, Monday, September 2, 1996).

Fifth, Plaintiff argues, Defendants Bosco and Drake are not entitled to qualified immunity as a matter of law based on Plaintiff's allegations, because both 27 C.F.R. § 478.11 and *United States v. Waters*, 23 F.3d 29 (2d Cir. 1994), clearly establish that confinement for observational purposes is not a "commitment" under 18 U.S.C. § 922(g)(4).  (*Id.*)

## 2.     Federal Defendants' Motion to Dismiss for Failure to State a Claim

### a.      Federal Defendants' Memorandum of Law

Generally, in their memorandum of law, the Federal Defendants assert three arguments. (Dkt. No. 17, Attach. 1.)

First, the Federal Defendants argue, to the extent Plaintiff's first claim is asserted against the Federal Defendants, that claim must be dismissed because the only proper Federal Defendant under 18 U.S.C. § 925A is the United States.   (*Id.*)

Second, the Federal Defendants argue, the remainder of Plaintiff's first claim against the Federal Defendants must be dismissed because (a) *United States v. Waters*, 29 F.3d 29 (2d Cir. 1994), held that an involuntary hospitalization pursuant to N.Y. Mental Hyg. Law § 9.27 constitutes a "commitment" to a mental institution under 18 U.S.C. § 922(g)(4), and (b) the fact that Plaintiff was involuntarily hospitalized under N.Y. Mental Hyg. Law § 9.37 rather than N.Y. Mental Hyg. Law § 9.27 is of no consequence because the procedural safeguards relating to involuntary admissions pursuant to N.Y. Mental Hyg. Law § 9.27 (notice, hearing, review, judicial approval of continued retention) apply to section N.Y. Mental Hyg. Law § 9.37.  (*Id.*)

Third, the Federal Defendants argue, in addition to having been involuntarily committed to the CNYPC in 1996, Plaintiff was involuntarily committed to Columbia Memorial Hospital in 2005, as evident from the criminal Complaint in the action of *United States v. Phelps*, 05-MJ-

0122 (N.D.N.Y. filed March 17, 2005), which attached the affidavit of a federal agent stating that he was informed by Dr. Michael O'Leary (the Columbia County Director of Community Services/Mental Health Center) that, on February 25, 2005, Plaintiff was "involuntarily committed" to Columbia Memorial Hospital. (*Id.*; *see also* Dkt. No. 17, Attach. 2, at 3.)

### b. Plaintiff's Opposition Memorandum of Law

Generally, in his opposition memorandum of law, Plaintiff asserts two arguments. (Dkt. No. 20, Attach. 1.)

First, Plaintiff argues, those Federal Defendants other than the United States are proper Defendants in this action because, in the event Plaintiff's claim against the State Defendants is successful on the merits, the Court needs jurisdiction over the current Federal Defendants in order to effectuate injunctive relief against them and have Plaintiff's NICS records corrected. (*Id.*)

Second, Plaintiff argues, his first claim states a claim against the Federal Defendants for three reasons: (a) the standard for what constitutes a "commitment" for purposes of 18 U.S.C. § 922(g)(4) does not include confinement for observational purposes under N.Y. Mental Hyg. Law § 9.37, as is evident from the Brady Act's legislative history and 27 C.F.R. § 478.11 (which states, "The term ['commitment'] does not include a person in a mental institution for observation . . ."); (b) *Waters* is distinguishable because the standard for an involuntary commitment under N.Y. Mental Hyg. Law § 9.27 is higher than the standard for a confinement under N.Y. Mental Hyg. Law § 9.37 (which permits a patient to be held involuntarily for only 72 hours, excluding Sundays and holidays, before a second physician must sign off on the patient's

continued retention);[4] and (c) for an involuntary confinement to be considered a "commitment" for purposes of 18 U.S.C. § 922(g)(4), there must be a higher standard for the confinement than is found in N.Y. Mental Hyg. Law § 9.37 (as was recognized in *Amato v. Hartnett*, 936 F. Supp.2d 416 [S.D.N.Y. 2013] and *In re Robert T.*, 887 N.Y.S.2d 486 [N.Y. Cnty. Ct., Dutchess Cnty., 2009]), including a specific notification that the patient is entitled to court review of his or her confinement (which did not occur in this case).  (*Id.*)

### c.    Federal Defendants' Reply Memorandum of Law

Generally, in their reply memorandum of law, the Federal Defendants assert three arguments.  (Dkt. No. 23.)

First, the Federal Defendants argue, Plaintiff's first claim must be dismissed against any Federal Defendants other than the United States, because Plaintiff is mistaken that, in the event that he succeeds on his first claim, he cannot obtain effective relief against the United States as a defendant.  (*Id.*)

Second, the Federal Defendants argue, the remainder of Plaintiff's first claim against the Federal Defendants must be dismissed for four reasons: (a) Plaintiff was involuntarily hospitalized, not merely admitted for observation, because Paragraph "(g)" of N.Y. Mental Hyg. Law § 9.37 expressly characterizes such an admission as a "commitment," as recognized by case law; (b) Plaintiff's attempts to distinguish *Waters* are not persuasive, because he cites no portion of that decision stating or implying that the involuntary-hospitalization procedures provided

---

[4]    The Court notes that it appears that Plaintiff was admitted to the CNYPC on Friday, August 30, 1996, and discharged from the CNYPC on Wednesday, September 4, 1996 (i.e., three days after his admission, excluding Sunday, September 1, 1996, and Labor Day, Monday, September 2, 1996).

under N.Y. Mental Hyg. Law § 9.27 represent a floor beneath which an involuntary admission would not constitute a "commitment" (and because, in any event, the procedural safeguards relating to involuntary admissions pursuant to N.Y. Mental Hyg. Law § 9.27 apply to admissions pursuant to N.Y. Mental Hyg. Law § 9.27); (c) the differences in the substantive standards contained in N.Y. Mental Hyg. Law §§ 9.27 and N.Y. Mental Hyg. Law § 9.37 (e.g., the fact that involuntary hospitalizations pursuant to N.Y. Mental Hyg. Law § 9.37 require the involvement of two individuals, rather than four) are not material to the applicability of 18 U.S.C. § 922(g)(4), because Waters did not turn on such things and because on the procedural protections afforded to patients (which is the same under both sections); and (d) when Plaintiff was admitted, he was notified of his statutory rights, including the right to request a court hearing regarding his hospitalization (and he cites no authority supporting a conclusion that either the notice was required to contain additional information beyond its contents or he had a right to a hearing within 72 hours).  (*Id*.)

Third, the Federal Defendants argue, additional support for the conclusion that Plaintiff was also involuntarily hospitalized in Columbia Memorial Hospital in 2005 includes a 20-page N.Y. State Incident Report (attached as Exhibit 1 to the reply papers), of which the Court may take judicial notice.  (*Id*.)

### d.       Plaintiff's Sur-Reply Affirmation

Generally, in his sur-reply affirmation (filed with leave of the Court), Plaintiff takes issue with the Federal Defendants' reliance on his involuntary admission in Columbia Memorial Hospital in 2005 for two reasons.  (Dkt. No. 29.)

14

First, Plaintiff argues, the Court should decline to take judicial notice of the N.Y. State Incident Report because they are neither certified nor in their original condition (being heavily redacted). (*Id.*)

Second, Plaintiff argues, even if the Court does take judicial notice of the N.Y. State Incident Report, that report does not support the Federal Defendants' argument that Plaintiff was involuntarily "committed" in 2005, for four reasons: (a) the report repeatedly refers to the 2005 stay Columbia Memorial Hospital as a "pickup" for an "evaluation" under N.Y. Mental Hyg. Law § 9.45 (which regards "Emergency Admissions for Immediate Observation, Care, and Treatment; Powers of Directors of Community Services"); (b) the report contains no records of any psychiatrists, physicians, or social workers or other staff indicating whether Plaintiff was evaluated, how long he was confined (if at all), what findings were rendered, or whether he was "committed" to any mental institution; (c) indeed, the Federal Defendants recognize that Plaintiff's 2005 stay Columbia Memorial Hospital did not constitute a "commitment" (which is why, in their reply memorandum of law, they refer to stay as merely an involuntary "hospitaliz[ation]"); and (d) as the Federal Defendants are "very well aware," Plaintiff was released from the Columbia Memorial Hospital before the holding of the retention hearing that he had requested pursuant to N.Y. Mental Hyg. Law § 9.39 (which must occur within five days of the request). (*Id.*)

## II.     GOVERNING LAW

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a

challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp.2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp.2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal"

notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp.2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for

relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4)

any matter of which the court can take judicial notice for the factual background of the case.[5]

## III.    ANALYSIS

### A.    State Defendants' Motion to Dismiss for Failure to State a Claim

After carefully considering the matter, the Court renders the following conclusions with regard to the State Defendants' motion to dismiss for failure to state a claim.

With regard to the State Defendants' first argument, the Court accepts that argument for the reasons stated by the State Defendants in their memorandum of law.  As a result, to the extent any of Plaintiff's three claims request money damages and are asserted against Defendants

---

[5]    *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

NYOMH and NYDCJS, or against Defendants Drake and Bosco in their official capacities, those claims are dismissed.

With regard to the State Defendants' second argument, the Court finds that both Plaintiff and the State Defendants are partly correct and partly incorrect. A state official in her official capacity, when sued for injunctive relief, would be a "person" under 42 U.S.C. § 1983, because official-capacity actions for prospective relief are not treated as actions against the state. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, n.10 (1989). However, a state is not a "person" under 42 U.S.C. § 1983, regardless of the relief sought. *Will*, 491 U.S. at 62-66; *cf. City of Kenosha v. Bruno*, 412 U.S. 507, 512-13 (1973) (holding that the meaning of the word "person" under 42 U.S.C. § 1983 does not vary with the type of relief sought). As a result, to the extent Plaintiff's second and third claims (under 42 U.S.C. § 1983 and the Second Amendment) are asserted against Defendants NYOMH and NYDCJS, or against Defendants Drake and Bosco in their official capacities for money damages, those claims are dismissed.

With regard to the State Defendants' third argument, the Court accepts that portion of the argument contending that, to the extent that Plaintiff's first claim is asserted against Defendants Drake and Bosco in their individual capacities, that claim is not expressly permitted by 18 U.S.C. § 925A; the Court reaches this conclusion for the reasons stated by the State Defendants in their memorandum of law. The Court would add only that Plaintiff failed to oppose this portion of the argument in his opposition memorandum of law, thus lightening the State Defendants' burden with regard to that portion of the argument. As a result, to the extent Plaintiff's first claim is asserted against Defendants Drake and Bosco in their individual capacities, that claim is dismissed.

With regard to the remaining portion of the State Defendants' third argument (i.e., that Plaintiff's first claim fails to allege facts plausibly suggesting that he was *erroneously* deemed not qualified to purchase a firearm under 18 U.S.C. § 922[g][4]), the Court rejects that portion of the argument for the reasons stated in Plaintiff's opposition memorandum of law. To those reasons the Court would add only one point. Even setting aside the dual role that Dr. M. Thambirajah played in both executing the application for admission and signing a recommendation for commitment, the Court finds that the "notice" that Plaintiff received upon his admission to the CNYPC (i.e., "[i]f you desire a court hearing on the questions of your hospitalization, ask to talk to the Mental Hygiene Legal Service") does not constitute a meaningful notice of any *right* (upon request) to a hearing *within 72 hours* of admission.[6] This is probably because no such right to a hearing within 72 hours of admission exists under N.Y. Mental Hyg. Law § 9.37.[7] If no such hearing is required until *after* a patient has been discharged from the mental institution upon the expiration of the 72-hour deadline (and the lack of the

---

[6]　Nor does the "notice" appear to constitute a meaningful notice of the fact that Plaintiff was (purportedly) being "committed" to a mental institution. While the "notice" states that the admission was pursuant to "Section 402 of the Correction Law" (an assertion later altered by the State Defendants when they argued that the admission was pursuant to N.Y. Correct. Law § 508, which regards the "[r]emoval of sick prisoners from jail"), the "notice" does not state that Section 402 regards the "[c]ommitment of mentally ill inmates." (Dkt. No. 1, Attach. 1, at 46.)

[7]　*See* N.Y. Mental Hyg. Law § 9.37(a) ("From the time of his or her admission under this section the retention of such patient for care and treatment shall be subject to the provisions for . . . hearing . . . provided by this article for the admission and retention of involuntary patients . . . ."); N.Y. Mental Hyg. Law § 9.31(c) (requiring a hearing *within five days* of request for patients involuntarily admitted on medical certification for up to sixty days pursuant to N.Y. Mental Hyg. Law § 9.27); *cf.* N.Y. Mental Hyg. Law § 9.39(a) (requiring a hearing *within five days* of request for patients admitted on an emergency basis for observation for up to fifteen days).

finding, by a second physician, of the need for the patient's continued retention), then it is unclear how, as a practical matter, such a patient could ever *not* be deemed to have been "committed" to the mental institution pursuant to N.Y. Mental Hyg. Law § 9.37, under the State Defendants' line of reasoning.[8]  Such a disregard of this important component of due process does not appear to comport with *United States v. Waters*, 23 F.3d 29, 32 (2d Cir. 1994), which relied on the availability of a hearing before continued retention (in concluding that such continued retention was a "commitment" for purposes of 18 U.S.C. § 922[g][4]).

With regard to the State Defendants' fourth argument, the Court rejects that argument for the reasons stated by Plaintiff in his opposition memorandum of law.

With regard to the State Defendants' fifth argument, the Court rejects that argument for the reasons stated by Plaintiff in his opposition memorandum of law (although the Court expresses no opinion as to the success of the argument on any motion for summary judgment that may be filed).

**B.      Federal Defendants' Motion to Dismiss for Failure to State a Claim**

After carefully considering the matter, the Court renders the following conclusions with regard to the Federal Defendants' motion to dismiss for failure to state a claim.

With regard to the Federal Defendants' first argument, the Court rejects that argument for the reasons stated by Plaintiff in his opposition memorandum of law. To those reasons, the Court would add only that numerous cases appear to exist asserting claims pursuant to 18 U.S.C. §

---

[8]      *Cf. Christine Q.Q. v. Capital Dist. Psychiatric Ctr.*, 487 N.Y.S.2d 167, 168 (N.Y. App. Div., 3d Dep't 1985) (dismissing appeal from order denying as moot patient's application for a hearing pursuant to N.Y. Mental Hyg. Law § 9.39 because she was no longer being confined to psychiatric center pursuant to N.Y. Mental Hyg. Law § 9.39).

925A against federal defendants other than simply "the United States." *See, e.g., Menard v. U.S. ex rel. Nat. Instant Criminal Background Sys.*, 118 F. App'x 823 (5th Cir. 2004); *Ross v. Fed. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 903 F. Supp.2d 333 (D. Md. 2012); *Enos v. Holder*, 855 F. Supp.2d 1088 (E.D. Cal. 2012); *Eibler v. Dept. of Treasury, Bureau of Alcohol, Tobacco, Firearms*, 311 F. Supp.2d 618 (N.D. Oh. 2004); *Richardson v. F.B.I.*, 124 F. Supp.2d 429 (W.D. La. 2000), *aff'd*, 264 F.3d 1141 (5th Cir. 2001).

With regard to the Federal Defendants' second argument, the Court rejects that argument for the reasons stated by Plaintiff in his opposition memorandum of law, as well as the reasons stated above in Part III.A. of this Decision and Order. To those reasons, the Court would add only the following analysis.

The Federal Defendants' reliance on Paragraph "(g)" of N.Y. Mental Hyg. Law § 9.37 (and cases relying on that paragraph) appears misplaced. Indeed, that paragraph appears to support Plaintiff's position. The paragraph reads as follows: "If a person is *examined* and determined to be mentally ill the fact that such person suffers from alcohol or substance abuse shall not preclude *commitment* under this section." N.Y. Mental Hyg. Law § 9.37(g) (emphasis added). However, the "examin[ation]" to which the paragraph is referring does not appear to be the "confirm[ation]" of "[t]he need for immediate hospitalization" performed by a "a staff physician of the hospital prior to admission" (which is described in the second sentence of Paragraph "(a)"), but the "certificat[ion]" of "another examining physician" who is a member of the psychiatric staff of the hospital (which is described in the *third* sentence of Paragraph "(a)").[9]

_____

[9]     N.Y. Mental Hyg. Law § 9.37(a) ("*The need for immediate hospitalization* shall be *confirmed* by a *staff physician* of the hospital prior to admission. Within seventy-two hours . . . after such admission, if such patient is to be retained for care and treatment beyond such time

23

The Court notes that the Federal Defendants' contrary interpretation of Paragraph "(g)" would appear to conflict with the N.Y. Mental Hygiene Law's rather consistent requirement that two examining physicians *at a hospital* render a finding of need before a person is involuntarily held for treatment. *See, e.g.,* N.Y. Mental Hyg. Law §§ 9.27, 9.39. As a result, the first 72 hours of an admission under N.Y. Mental Hyg. Law § 9.37 may be, and has been, fairly be characterized as a period of "observation" or "evaluation."[10]

The bulk of the remainder of the Federal Defendants' second argument turns on the fact that, upon his admission to the CNYPC, he was notified that, "[i]f you desire a court hearing on the questions of your hospitalization, ask to talk to the Mental Hygiene Legal Service." The Court discusses that problems with notice above in Part III.A. of this Decision and Order.

Finally, with regard to the Federal Defendants' third argument, the Court rejects that argument for the reasons stated by Plaintiff in his sur-reply affirmation. To those reasons, the Court would add only the following analysis.

An admission pursuant to N.Y. Mental Hyg. Law § 9.39 does not appear to constitute a "commitment" to a mental institution for purposes of 18 U.S.C. § 922(g)(4) for the same reasons

---

and he does not agree to remain in such hospital as a voluntary patient, the *certificate* of *another examining physician* who is a member of the psychiatric staff of the hospital that the patient is in need of involuntary care and treatment shall be filed with the hospital.") (emphasis added).

[10]     *See, e.g., Matter of DePass*, 531 N.Y.S.2d 427, 428 (N.Y. Sup. Ct., Queens Cnty. 1988) (stating that "Sections *9.37* and 9.39 . . . contain the requirements for emergency admissions . . . [and] provide for the involuntary admission of a person who has a mental illness for which immediate *observation*, care, and treatment . . . ") (emphasis added; internal quotation marks omitted); *Monaco v. Hogan*, 576 F. Supp.2d 335, 351 (E.D.N.Y. 2008) (stating that "an individual" may be "*evaluated* following initial admission pursuant to §§ 9.27, *9.37*, or 9.39") (emphasis added), *disagreed with on other grounds, Bolmer v. Oliveira*, 594 F.3d 134, 144-45 (2d Cir. 2010).

that an admission pursuant to N.Y. Mental Hyg. Law § 9.39 does not constitute a such a "commitment" (which reasons are discussed above in Part III.A. of this Decision and Order).

However, because of the lack of record evidence regarding the duration of, and findings from, Plaintiff's 2005 stay at Columbia Memorial Hospital (and the impediments to considering such evidence on the pending motions), the Court expresses no opinion as to the success of the Federal Defendants' reliance on that stay in any motion for summary judgment that may be filed.

**ACCORDINGLY**, it is

**ORDERED** that the State Defendants' motion to dismiss for failure to state a claim (Dkt. No. 7) is **<u>GRANTED</u> in part** and **<u>DENIED</u> in part**, as set forth above in Part III.A. of this Decision and Order; and it is further

**ORDERED** that the Federal Defendants' motion to dismiss for failure to state a claim (Dkt. No. 17) is **<u>DENIED</u>**; and it is further

**ORDERED** that, following the Court's decision of Defendants' two motions, all of the claims in Plaintiff's Complaint (Dkt. No. 1) are **<u>DISMISSED</u> except** for the following claims, which **<u>SURVIVE</u>** Defendants' motions:

      (1) Plaintiff's first claim (i.e., under 18 U.S.C. § 925A) to the extent that (a) it is asserted against the Federal Defendants and requests injunctive or declaratory relief, or (b) it is asserted against Defendants Drake and Bosco in their official capacities and requests injunctive or declaratory relief;

      (2) Plaintiff's second claim (i.e., under 42 U.S.C. § 1983 and the Second Amendment) to the extent that it is asserted against Defendant Bosco in her individual capacity and requests monetary relief; and

(3) Plaintiff's third claim (i.e., under 42 U.S.C. § 1983 and the Second

Amendment) to the extent that (a) it is asserted against Defendants Drake and Bosco in

their individual capacities (regardless the relief requested), or (b) it is asserted against

Defendants Drake and Bosco in their official capacities and requests injunctive relief; and

is further

**ORDERED** that Defendants file an answer to the Plaintiff's Complaint within 14 days of

the date of this Decision & Order pursuant to Fed.R.Civ.P. Rule 12(a)(4)(a), and this case is

referred back to Magistrate Judge Hummel for the setting of pretrial scheduling deadlines.

Dated: March 26, 2015
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge